UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DESHAWN T. MASON,

       Petitioner,

                               CASE NO. 2:07-CV-10851
v.                              JUDGE NANCY G. EDMUNDS
                               MAGISTRATE JUDGE PAUL J. KOMIVES

SUSAN S. DAVIS,

       Respondent.
_____/

## REPORT AND RECOMMENDATION

I.      RECOMMENDATION: The Court should deny petitioner's application for the writ of habeas corpus.

II.     REPORT:

A.     *Procedural History*

      1.      Petitioner Deshawn T. Mason is a state prisoner, currently confined at the Handlon Correctional Facility in Ionia, Michigan.

      2.      On February 18, 2004, petitioner was convicted of two counts of armed robbery, MICH. COMP. LAWS § 750.529, and possession of firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b, following a jury trial in the Wayne County Circuit Court. On March 10, 2004, he was sentenced to concurrent terms of 17-to-30 years' imprisonment on each of the armed robbery convictions, to be served consecutively to a term of 2 years' imprisonment on the felony-firearm conviction.

      3.      Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

> I.  THE APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL WHERE THE TRIAL COUNSEL FAILED TO OBJECT TO OR OTHERWISE ATTACK THE IDENTIFICATION MADE BY FRANK ERROL.
>
> II. UNDER THE CIRCUMSTANCES OF THE CASE, THE TRIAL COURT COMMITTED A REVERSIBLE ERROR IN ADMITTING OTHER ACTS EVIDENCE.
>
> III. BOTH THE TRIAL COURT'S INCORRECT AIDING AND ABETTING INSTRUCTION AND TRIAL COUNSEL'S FAILURE TO OBJECT THERETO, COMBINED TO DENY APPELLANT DUE PROCESS OF LAW.
>
> IV. THE PROSECUTION IMPROPERLY VOUCHED FOR A TRIAL WITNESS AND TRIAL COUNSEL'S FAILURE TO OBJECT THERETO AMOUNTS TO INEFFECTIVE ASSISTANCE OF COUNSEL-THEREBY DENYING THE APPELLANT A FAIR TRIAL.

The court of appeals found no merit to petitioner's claims, and affirmed his conviction and sentence. *See People v. Mason*, No. 254637, 2005 WL 2861591 (Mich. Ct. App. 2005) (per curiam).

4.  Petitioner, proceeding *pro se*, sought leave to appeal these issues in the Michigan Supreme Court. The Supreme Court denied petitioner's application for leave to appeal in a standard order. *See People v. Mason*, 474 Mich. 1096, 711 N.W.2d 739 (2006).

5.  Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on February 27, 2007. As grounds for the writ of habeas corpus, he raises the four claims that he raised in the state courts.

6.  Respondent filed his answer on April 8, 2008. He contends that petitioner's claims are without merit.

B.  *Factual Background Underlying Petitioner's Conviction*

Petitioner's convictions arise from the armed robbery of the Nice Beauty Supply store on

2

October 8, 2002. The factual background was accurately summarized in the Michigan Court of Appeal's unpublished opinion:

> Defendant's convictions arise from the armed robbery of the Nice Beauty Supply store in Detroit on October 8, 2002. Testimony at trial indicated that Darnell Suttles drove defendant and codefendant Terrance Greene to the store and waited outside in his car while defendant and Greene entered the store, posing as customers. Defendant jumped over the counter, pointed a pistol at the cashier, Gum Sin Lee, and demanded money and the store's surveillance tape. Lee gave him both. Defendant shot and wounded Errol Frank, the store's manager, before leaving the store. Suttles drove defendant and Greene away.
>
> Over defendant's objection, evidence was presented that defendant participated in two other robberies on October 11, 2002. Earlier that day, Suttles drove defendant, Greene, and Gregory Anderson to the C & J Beauty Supply store. Suttles waited outside in his car while defendant, Greene, and Anderson entered the store and pretended to be customers. Defendant then approached the cashier and demanded money and the surveillance tape at gunpoint. The cashier gave them the money, but told them that the store's surveillance system was not working that day. Suttles drove the getaway car for the C & J robbery, but was arrested later that day.
>
> Later on October 11, 2002, defendant, Greene, and Anderson robbed a McDonald's restaurant in Southfield. They approached the counter as if they were customers, and defendant produced a gun. They demanded money from the cash registers, and then ordered the employees to the back of the store where they demanded money from the safe and the surveillance tape. The clerk was unable to remove the tape from the recording machine, so they took the entire machine. A short distance from the McDonald's, the police began to pursue the getaway car. Defendant and his co-felons threw a gun and the video recorder from the car before they crashed into a utility pole. Defendant, Greene, and Anderson were all arrested.
>
> The police recovered the video recorder and gun that were thrown from the car after the McDonald's robbery. Although the gun was damaged and could no longer fire, a firearms examiner manually pushed bullets through the barrel to compare the markings on the bullet used to shoot Frank. She concluded that the markings on the pushed bullets matched the markings on the bullet that shot Frank.
>
> Defendant confessed to the C & J robbery and pleaded guilty to armed robbery for that offense. Greene and Anderson also pleaded guilty to their participation in the C & J robbery. Suttles pleaded guilty to a reduced charge of unarmed robbery in the C & J case pursuant to a plea agreement in which he agreed to cooperate in the prosecution of defendant and Greene in the Nice Beauty Supply robbery. Defendant and Greene were tried jointly before the same jury and each was convicted of two counts of armed robbery, and one count of

felony-firearm.

*Mason*, 2005 WL 2861591, at *1.

C.   *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996).  *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997).  Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1)

permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the

5

requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

D.    *Other Acts Evidence Claim (Claim II)*

   1.    *Clearly Established Law*

It is well established that habeas corpus is not available to remedy a state court's error in the application of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Jackson v. Ylst*, 921 F.2d 882, 885 (9th Cir. 1990) (a federal court on habeas review "ha[s] no authority to review a state's application of its own laws."). Thus, unless a violation of a state's evidentiary rule results in the denial of fundamental fairness, an issue concerning the admissibility of evidence does not rise to the level of constitutional magnitude. *See Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988); *Davis v. Jabe*, 824 F.2d 483, 487 (6th Cir. 1987). "[A] federal habeas court has nothing whatsoever to do with reviewing a state court ruling on the admissibility of evidence under state law. State evidentiary law simply has no effect on [a court's] review of the constitutionality of a trial, unless it is asserted that the state law itself violates the Constitution." *Pemberton v. Collins*, 991 F.2d 1218, 1223 (5th Cir. 1993). As the Sixth Circuit has noted, "[e]rrors by a state court in the admission of evidence are not cognizable in habeas proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair

trial." *Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir. 1994).

In short, "[o]nly when the evidentiary ruling impinges on a specific constitutional protection or is so prejudicial that it amounts to a denial of due process may a federal court grant a habeas corpus remedy." *Barrett v. Acevedo*, 169 F.3d 1155, 1163 (8th Cir. 1999); *see also*, *Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2001). Where a specific constitutional right–such as the right to confront witnesses or to present a defense–is not implicated, federal habeas relief is available only if the allegedly erroneously admitted evidence "is almost totally unreliable and . . . the factfinder and the adversary system will not be competent to uncover, recognize, and take due account of its shortcomings." *Barefoot v. Estelle*, 463 U.S. 880, 899 (1983).

    2.    *Analysis*

In the instant matter, petitioner objects to the admission of evidence that implicated him in the commission of additional robberies. Petitioner contends that the trial court erroneously admitted this evidence according to Michigan law. Petitioner's Writ of Habeas Corpus at 6 [hereinafter "Writ"]. However, as noted above, it is not the duty of a federal habeas corpus court to correct alleged errors of state law committed by a state court. *See Estelle*, 502 U.S. at 67-68. Indeed such claims are not cognizable on habeas review. *See Jackson*, 921 F.2d at 885. Thus, the issue becomes whether any alleged error of state law is so egregious as to rise to the level of an unconstitutional denial of petitioner's right to a fair trial.

Petitioner suggests that the prejudicial nature of the other acts evidence should have rendered said evidence inadmissible. Writ at 6. Petitioner, however, fails to acknowledge that both the Supreme Court and the Sixth Circuit have repeatedly held that a defendant is not denied

a fair trial by the admission of other bad acts evidence which is relevant to the defendant's trial. *See Estelle*, 502 U.S. at 69-70; *Dowling v. United States*, 493 U.S. 342, 353-54 (1990); *Coleman v. Mitchell*, 268 F.3d 417, 439-40 (6th Cir. 2001); *Pennington v. Lazaroff*, 13 Fed. Appx. 228, 232 (6th Cir. 2001) (per curiam) (unpublished); *Manning v. Rose*, 507 F.2d 889, 893-95 (6th Cir. 1974). Here, the other acts evidence was undoubtedly relevant to petitioner's trial as it established a modus operandi, explained how petitioner was apprehended, and explained how the gun that was fired during the Nice Beauty Supply robbery could be linked to petitioner. Because the other acts evidence was highly relevant, its admission at trial was not improper, and therefore petitioner was not deprived of his constitutional right to a fair trial.

"State court evidentiary rulings do not rise to the level of due process violations unless they 'offend . . . some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Coleman*, 244 F.3d at 440 (quoting *Patterson v. New York*, 432 U.S. 197, 202 (1977)). In this case, the disputed evidentiary rulings do not offend such fundamental principles of justice. Accordingly, petitioner should be denied habeas relief on this claim.

E.   *Prosecutorial Misconduct Claim (Claim IV)*

1.   *Clearly Established Law*

For habeas relief to be warranted on the basis of prosecutorial misconduct, it is not enough that the prosecutor's conduct was "undesirable or even universally condemned." *Darden v. Wainright*, 477 U.S. 168, 181 (1986). Rather, the misconduct must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id*. (internal quotation omitted). "[T]he touchstone of due process analysis . . . is the fairness of the trial, not

the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). In determining whether the prosecutor's conduct was so egregious as to warrant habeas relief, a court should consider "the degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused; whether they are isolated or extensive; whether they were deliberately or accidentally placed before the jury; and the strength of the competent proof to establish the guilt of the accused." *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (internal quotations and citations omitted).

Also, in special cases "where the petitioner alleges that both the court's action in admitting the evidence and the prosecutor's action in presenting the evidence violate due process, [courts] have conflated the two issues and applied the same test, looking to see whether the admission of the evidence was so egregiously improper as to deny the petitioner a fair trial." *Sweet v. Delo*, 125 F.3d 1144, 1154 (8th Cir. 1997).

In sum, to constitute a denial of due process the prosecutor's conduct must be "so pronounced and persistent that it permeates the entire atmosphere of the trial." *Id*. (internal quotation omitted).

2.   *Analysis*

While alleging that the trial court improperly admitted the other acts evidence at trial, petitioner implicitly accuses the prosecutor of knowingly and maliciously presenting this unduly prejudicial evidence. See Writ at 12. Petitioner alleges that the prosecutor's introduction of this other acts evidence amounted to misconduct. However, because the state courts concluded that the evidence in question was admissible, the prosecutor did not commit misconduct by introducing it. *See Sweet*, 125 F.3d at 1154; *Hammond v. Michigan Parole Bd.*, No. 04-73385,

2006 WL 2161028, at *16 (E.D. Mich. July 31, 2006) (Roberts, J., adopting Recommendation of Komives, M.J.). Furthermore, it has already been noted above that the evidence in question was relevant, and therefore its admission did not amount to a constitutional violation.

Petitioner next argues that "the prosecution improperly vouched for a trial witness[.]" Writ at 17. The statement in question reads, in relevant part, as follows: "we made him be truthful in his statement. Totally truthful in the statement." Writ at 17. Petitioner contends that this statement amounts to misconduct because the prosecutor was "[implying] that the witness would not testify untruthfully." Writ at 19. Furthermore petitioner suggests that, by making this statement, the prosecutor was placing the prestige of his office behind the witness. Writ at 19. At first blush it may seem as though the prosecutor did indeed vouch for the witness. However, when viewed in context it is apparent that the above quoted statement was made merely as a response to an argument put forth by defense counsel. The defense argued that the testimony in question was falsely incriminating because the witness was willing to say anything in exchange for leniency. In response to this argument, the prosecution made it clear that its plea agreement with the witness required him to testify truthfully. When viewed in this light, it is apparent that the prosecutor's statement was not an improper bolstering of testimony, but instead was an appropriate response to the defense's argument. Accordingly, the above quoted statement did not result in a fundamentally unfair trial.

Lastly, petitioner makes the unsupported contention that the "prosecutor also vouched for the credibility of the Detroit Police Department." Writ at 19. Without factual support for this allegation, this court cannot definitively say that petitioner's constitutional right to a fair trial was violated.

Because petitioner fails to demonstrate that the prosecution acted improperly, so as to rise to the level of a due process violation, *see Darden*, 477 U.S. at 181, habeas relief should not be granted on this claim.

F.   *Improper Jury Instructions Claim (Claim III)*

   1.   *Clearly Established Law*

In order for habeas corpus relief to be warranted on the basis of incorrect jury instructions, a petitioner must show more than that the instructions are undesirable, erroneous or universally condemned; rather, taken as a whole, they must be so infirm that they rendered the entire trial fundamentally unfair. *See Estelle*, 502 U.S. at 72; *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977); *Wood v. Marshall*, 790 F.2d 548, 551-52 (6th Cir. 1986); *cf. United States v. Sheffey*, 57 F.3d 1419, 1429-30 (6th Cir. 1995) (standard of review for jury instructions challenged on direct criminal appeal). As the Supreme Court noted in *Estelle*, the Court should "also bear in mind [the Supreme Court's] previous admonition that we 'have defined the category of infractions that violate "fundamental fairness" very narrowly.'" *Estelle*, 502 U.S. at 72-73 (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990)). If an instruction is ambiguous and not necessarily erroneous, it can run afoul of the Constitution only if there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution. *See Estelle*, 502 U.S. at 72 & 73 n.4; *Boyde v. California*, 494 U.S. 370, 380 (1990). In short, instructional errors of state law will rarely form the basis for federal habeas corpus relief. *See Estelle*, 502 U.S. at 71-72.

   2.   *Analysis*

Petitioner's argument regarding the jury instructions at trial is not entirely clear.

Petitioner appears to be challenging the trial judge's instructions regarding the necessary intent to be convicted of aiding and abetting. The Michigan Court of Appeals properly explained that the jury instructions in question were not erroneous:

> The requisite intent for conviction as an aider and abettor "is that necessary to be convicted of the crime as a principal." *People v. Mass*, 464 Mich. 615, 628; 628 NW2d 534 (1995). Armed robbery is a specific intent crime for which the prosecutor must establish that the defendant intended to permanently deprive the owner of property. *People v. King*, 210 Mich.App. 425, 428; 534 NW2d 534 (1995). The trial court stated that in order to convict defendant as an aider and abettor, he "must have intended the commission of the crime alleged or must have known that the other person intended its commission at the time of giving the assistance." It also stated that in order to convict a defendant of armed robbery, the prosecutor must prove "that at the time they took the money the Defendants intended to take it away from Errol Frank permanently." It repeated this instruction with respect to Gum Sin Lee. Read as a whole, the trial court's instructions adequately advised the jury that it could convict defendant as an aider and abettor only if he possessed the same intent that would be required to convict him as a principal, i.e., that he specifically intended to permanently deprive the owner of property. The trial court's instructions were not erroneous, let alone plain error.

*Mason*, 2005 WL 2861591, at *5

As the Court of Appeals noted, the jury instructions properly conveyed the requisite intent element of the crime. Simply put, it cannot be said that the challenged instruction "by itself so infected the entire trial that that the resulting conviction violate[d] due process." *Estelle*, 502 U.S. at 72. Accordingly, the court should conclude that petitioner is not entitled to habeas relief on this claim.

G.   *Ineffective Assistance Claim (Claim I)*

    1.   *Clearly Established Law*

The Sixth Amendment right to counsel and the corollary right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668,

687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id*. at 687. These two components are mixed questions of law and fact. *See id*. at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.*

With respect to the performance prong of the inquiry, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id*. at 689; *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id*. at 695.

  2. *Analysis*

Petitioner first contends that trial counsel's failure to object to the identification made by Frank Errol amounts to a violation of his Sixth Amendment right to effective assistance of counsel. Petitioner suggests that the identification made by Frank Errol was improper because it

was not a positive identification. Petitioner claims that the identification made by Errol was only "tentative," Writ at 4, and that it was improper for Sergeant Nichols to inform Errol that he had identified a suspect. Furthermore, Petitioner suggests that it was improper not to arrange a corporeal lineup. *Id*. Petitioner asserts that trial counsel's failure to object to these alleged errors was objectively unreasonable and unduly prejudicial.

This court need not determine whether trial counsel's failure to object was unreasonable because even if counsel had objected, and the objection been sustained, petitioner was not prejudiced. Overwhelming evidence at trial established petitioner's guilt, and therefore it is highly unlikely that the identification made by Mr. Errol was in any way outcome-determinative. Petitioner's cohort Mr. Darnell Suttles testified at trial that petitioner had participated in the Nice Beauty Supply robbery and that petitioner was indeed the gunman that shot Mr. Errol. Moreover, physical evidence was presented that established that the gun defendant used during the McDonald's robbery was the same one that was used to shoot Mr. Errol. Thus, in light of this additional evidence, it cannot be said that petitioner was prejudiced by trial counsel's alleged error.

Petitioner next asserts that trial counsel's failure to object to the previously mentioned jury instruction amounted to ineffective assistance of counsel. Here, petitioner's assertion is without merit because it has already been noted that the jury instructions were not erroneous. The Michigan Court of Appeals held that the trial judge properly instructed the jury as to the elements of the crime. Because the jury instructions were proper, defendant cannot prove that trial counsel's failure to object was an unreasonable error pursuant to *Strickland v. Washington*.

Lastly, petitioner claims that trial counsel's failure to object to the prosecutor's alleged

improper bolstering of a witness' testimony amounted to ineffective assistance of counsel. This claim is without merit as well. As previously discussed, the prosecutor's conduct at trial never amounted to misconduct. Thus, trial counsel had no basis for objection. Accordingly, trial counsel did not commit an unreasonable error by failing to object to the prosecutor's statements.

Because the state courts' rulings amounted to a reasonable application of the criteria set forth by the United States Supreme Court in *Strickland v. Washington*, this court should conclude that petitioner is not entitled to habeas relief on this claim

H.   *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.

III.   NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373

(6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated:8/11/09

> The undersigned certifies that a copy of the foregoing order was served on the attorneys of record  by electronic means or U.S. Mail on August 11, 2009.
>
> s/Eddrey Butts
> Case Manager